# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| PATSY ANN WESTFALL, | ) | CASE NO. 5:16CV02857 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Patsy Ann Westfall ("Plaintiff"), challenges the final decision of Defendant, Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.

1

## I. PROCEDURAL HISTORY

On February 4, 2014, Plaintiff filed an application for SSI alleging a disability onset date of July 1, 2013. (Transcript ("Tr.") 142). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 82, 93, 103-105).

On December 9, 2015, an ALJ held a hearing, during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 38-72). On January 25, 2016, the ALJ issued a written decision finding Plaintiff was not disabled. (Tr. 18-35). The ALJ's decision became final on October 4, 2016, when the Appeals Council declined further review. (Tr. 1-3).

On November 23, 2016, Plaintiff filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1). The parties have completed briefing in this case. (Doc. Nos. 11, 13). Plaintiff asserts the following single assignment of error:

> (1) The ALJ's RFC is contrary to law because it fails to include any limitations of Plaintiff's ability to use her arms despite finding her should impairments "severe" and evidence that she has significant limitations of these abilities.

(Doc. No. 11 at 4).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff 53 years-old at the time of her administrative hearing. (Tr. 142). She has a tenth grade education and is able to communicate in English. (Tr. 162, 164). She has past work as a laborer and a newspaper carrier. (Tr. 164).

2

**B.     Medical and Opinion Evidence**

On January 24, 2013, Plaintiff was seen by consultative examiner Stephen Rodgers, M.D. (Tr. 205-207). Plaintiff reported a nine-year history of upper back pain and a twelve-year history of right shoulder pain. (Tr. 205). Dr. Rodgers indicated that Plaintiff had some difficulty reaching overhead. (Tr. 205). On physical examination, Dr. Rodgers noted the following: no motor deficits; decreased sensation of the left thumb; slow, but normal, gait; no muscle spasms or abnormal reflexes; normal appearing joints; normal functioning of the upper extremities with manual muscle testing, including normal grasping, manipulating, pinching, and fine motor control; and normal range of motion in her elbows, hands, fingers, and shoulders. (Tr. 206).

Dr. Rodgers opined that Plaintiff's ability to do work-related activities included standing and walking limited to four hours per day without the need for an assistive device; frequent bending and twisting; lifting limited to 40 pounds occasionally and 20 pounds frequently; and no limitations with respect to vision, hearing, speech, or use of her hands. (Tr. 206).

On April 1, 2014, Dr. Rodgers conducted a second consultative examination. (Tr. 221-222). Plaintiff reported a three-year history of upper back pain, and she noted some intermittent tingling in the finger tips of her left hand. (Tr. 221). A physical examination revealed no motor deficits; decreased sensation in the left thumb; normal gait; normal manual muscle testing in the upper extremities including normal grasping, manipulating, pinching, and fine motor control; and normal range of motion in her extremities. (Tr. 222).

Dr. Rodgers opined that Plaintiff's ability to do work-related activities included frequent bending and squatting; and no limitations regarding vision, hearing, speech, or use of her hands. (Tr. 222).

On April 3, 2014, state agency reviewer John L. Mormol, M.D., reviewed Plaintiff's medical records and opined that she could perform medium work with occasional climbing of ladders, ropes, and scaffolds; and that she could frequently stoop and crouch and occasionally crawl. (Tr. 78-79). On July 16, 2014, state agency reviewer Esberdado Villaneuva, M.D. considered Plaintiff's records and concurred with Dr. Mormol's findings with one exception – that Plaintiff was able to crawl frequently. (Tr 88-89).

In June 2014, Plaintiff sought chiropractic treatment. (Tr. 233). She rated her neck and lower back pain at seven or eight out of ten, and she also reported occasional numbness in her arms. (Tr. 233). An x-ray showed a hypolordotic cervical spine. (Tr. 232).

On August 28, 2014, Plaintiff established primary care with Frank D. Lazzerini, M.D. (Tr. 309). The treatment note shows that she had not had primary care for over seven years. (Tr. 309). Plaintiff noted a history of back pain and she complained of pain in her neck, back, and shoulders. (Tr. 309). She reported that her pain interferes with her day to day activities and with sleep. (Tr. 309). On physical examination, Plaintiff exhibited no acute distress. She showed tenderness in her cervical and thoracic spine, normal motor strength in her extremities, and an intact sensory exam. (Tr. 310).

Plaintiff requested that Dr. Lazzerini complete paperwork in connection with her claim for SSI. (Tr. 309). Dr. Lazzerini completed the questionnaire and opined that Plaintiff could lift less than 10 pounds either occasionally or frequently; that she could stand or walk less than 2 hours in an 8-hour workday; that she must alternate between sitting and standing to alleviate pain; that she was limited in pushing and pulling with her extremities; that she could never perform postural activities; that she had limited reaching, handling, fingering, feeling, seeing,

4

hearing, and speaking; and that she must avoid environments with temperature extremes, noise, dust, vibration, humidity, hazards, and pulmonary irritants. (Tr. 237-240).

An x-ray dated September 1, 2014 showed mild degenerative changes of the mid-cervical and mid-thoracic spines. (Tr. 246). There was disc space narrowing at L5-S1 which had progressed since a prior study. (Tr. 246). Minimal spurring was present at L3-L4. Sacroiliac joints were unremarkable, and no osteolytic or osteoblastic lesions were identified. (Tr. 246). An x-ray of her shoulders was unremarkable. (Tr. 251).

On September 18, 2014, Plaintiff presented to Dr. Lazzerini complaining of pain in her joints especially her left shoulder. (Tr. 313). A physical examination revealed pain and tenderness in her left shoulder, with painful and limited range of motion, and weakness on abduction. (Tr. 314). Motor strength was normal, and sensation intact. (Tr. 314). Diagnoses included rotator cuff sprain and strain, diabetes with neurological manifestations, degeneration of thoracic or thoracolumbar latervertebral disx, and degeneration of lumbar or lumbosacral intervertebral disc. (Tr. 314). An MRI of the left shoulder was ordered. (Tr. 314).

Plaintiff had a follow-up appointment with Dr. Lazzerini on October 16, 2014. (Tr. 316). The treatment note indicates that Plaintiff's insurance did not approve the MRI for the left shoulder. (Tr. 316). A physical examination revealed tenderness in the cervical, thoracic, and lumbosacral spine; tenderness and pain in multiple joints; normal motor strength in the extremities, and a normal sensory exam. (Tr. 317). Plaintiff was diagnosed with chronic pain syndrome. (Tr. 317)

On November 13, 2014, Plaintiff presented to Dr. Lazzerini complaining of pain in her joints. (Tr. 319). She reported that her pain interfered with her day-to-day activities, but her

5

medication helped her function. (Tr. 319). A physical examination revealed tenderness to palpation over the lumbar-sacral spine, normal motor strength in her extremities, and an intact sensory exam. (Tr. 320). On December 11, 2014, Plaintiff reported back pain but that both chiropractic therapy and medication were helping her. (Tr. 321). A physical exam showed normal motor strength in her extremities, and she had a normal sensory examination. (Tr. 321-22).

On January 8, 2015, Plaintiff reported ongoing shoulder pain to Dr. Lazzerini. (Tr. 323-324). On physical examination, Plaintiff exhibited decreased range of motion of the cervical spine and shoulders, but normal motor strength in her extremities. (Tr. 323-324). Her sensory exam was intact. (Tr. 323-324).

During a physical therapy session on January 19, 2015, Plaintiff reported insidious onset of left shoulder pain, anteriorly and bilaterally. (Tr. 372). She reported experiencing "multiple bouts" of left shoulder pain over the past several years. (Tr. 372). Plaintiff was reportedly unable to reach back or hold her arm overhead; and she reported having difficulty combing and washing her hair, putting on or taking off a jacket, and lying on her left side. (Tr. 372). She had decreased range of motion and strength in her left shoulder. (Tr. 372). At rest, her pain was rated at three out of ten; with activity her pain rating was ten out of ten. (Tr. 374). She had a positive Hawkins-Kennedy impingement test, a positive near impingement test, and a positive empty can test. (Tr. 374). During a follow-up session on February 3, 2015, Plaintiff reported that her mobility had improved with less pain in the shoulder, and she was able to perform added active assistive exercises with only minimal increase in pain. (Tr. 402).

On February 9, 2015, Plaintiff presented to Dr. Lazzerini and reported that her left shoulder pain was improving with physical therapy. (Tr. 325). Medication was also reportedly helping. (Tr. 325). Physical examination revealed tenderness over her lumbosacral spine. (Tr. 326). Motor strength was normal in her extremities, and sensation was intact. (Tr. 326).

On a number of occasions from April through November 2015, Plaintiff presented to Dr. Lazzerini complaining of persistent pain, but she reported that medication was helping. (Tr. 332, 337, 340, 346). During this time, Plaintiff exhibited normal motor strength in her extremities, and her sensation was intact. (Tr. 328-357). Plaintiff also exhibited symmetric reflexes bilaterally, intact coordination, and normal station and gait. (Tr. 333, 338, 341, 349, 357). In August 2015, she was prescribed a TENS unit. (Tr. 347). In November, she reported continued pain in her joints. (Tr. 354).

On November 12, 2015, Plaintiff presented in the Affinity Medical Center emergency department with complains of non-radiating lumbosacral back pain. (Tr. 272). Physical examination revealed normal back alignment, decreased range of motion, lumbar vertebral tenderness, normal motor strength, no focal neurological deficits, normal sensation, and normal coordination. (Tr. 274).

**D.     Hearing Testimony**

The ALJ concluded that Plaintiff had no past relevant work for purposes of SSI. (Tr. 45). The ALJ then asked the VE whether a hypothetical individual with Plaintiff's age, education, past work experience, and residual functional capacity could perform work in the national economy. The VE testified that such a person could perform work as cafeteria attendant, housekeeping cleaner, and cashier. (Tr. 63).

### III. STANDARD FOR DISABILITY

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since January 30, 2014, the application date (20 CFR 416.971 et seq.).

8

2. The claimant has the following severe impairments: obesity, cervicalgia, osteoarthrosis, chronic pain syndrome, rotator cuff sprain and strain, degeneration of the thoracic or thoracolumbar intervertebral disc, and degeneration of lumbar or lumbosacral intervertebral disc (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally crawl and climb ramps or stairs. The claimant can frequently stoop, kneel, and crouch.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on March 28, 1962 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defmed in the Social Security Act, since January 30, 2014, the date the application was filed (20 CFR 416.920(g)).

(Tr. 23-30).

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at

9

* 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

Plaintiff challenges the ALJ's RFC determination. An RFC describes the work related activities a claimant can perform despite his or her limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the

11

Commissioner of Social Security. *See* 20 C.F.R.§ 416.927(d)(2). In this case, the ALJ assigned Plaintiff the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally crawl and climb ramps or stairs. The claimant can frequently stoop, kneel, and crouch.

Based on the testimony of the vocational expert, the ALJ determined that an individual of Plaintiff's age, education, past work experience, and RFC could perform work as cafeteria attendant, housekeeping cleaner, and cashier. (Tr. 63).

Plaintiff argues that the RFC erroneously fails to account for limitations relating to Plaintiff's ability to use her arms. In particular, Plaintiff points out that at Step 2 of the sequential evaluation, the ALJ determined that Plaintiff's "rotator cuff sprain and strain" was a severe impairment. Under the regulations, Plaintiff notes, a severe impairment is one that results in more than minimal impairment of the claimant's physical or mental ability to perform "basic work activities." *See* 20 C.F.R. §§ 416.920 and 416.921(a). Plaintiff accordingly argues that because the "rotator cuff sprain and strain" would result in more than minimal impairment under the regulations, its effects should have been reflected in the RFC.

Second, Plaintiff points out that her treating physician opined that Plaintiff could only occasionally reach, handle, finger, and feel. (Doc. No. 11 at 8; Tr. 239). Plaintiff asserts that there is substantial evidence in the record to support this conclusion. In particular, she describes evidence that in 2014 Plaintiff complained of lower back pain radiating to her left arm with numbness in her hand. (Tr. 233). At that time, Plaintiff's physical examinations showed left shoulder pain and tenderness with painful arc and weakness on abduction. (Tr. 314). In 2015, Plaintiff continued to have ongoing left shoulder pain with decreased range of motion in her

12

shoulders and cervical spine. (Tr. 323-324). A physical therapist noted in 2015 that Plaintiff was "unable to reach back or hold arm overhead," and she had difficulty combing and washing her hair, taking on or off a jacket, or [lying] on her left side." (Tr.372). Plaintiff maintains that this, along with other evidence in the record, proves that Plaintiff had reaching and handling limitations that should have been included in the RFC.

Plaintiff further argues that had these limitations been included in the RFC, she would have been precluded from performing the jobs identified by the ALJ. She notes that under the Dictionary of Occupational Titles the positions of cashier, cafeteria attendant, and housekeeping cleaner all require some degree of reaching and handling. (Doc. No. 11 at 10-11).

"The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him." *Bryan v. Comm'r of Soc. Sec.*, 383 Fed.Appx. 140, 148 (3d Cir. 2010). "In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 880 (N.D. Ohio 2011). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96–8p, at *7, 1996 SSR LEXIS 5, *20. While the RFC is for the ALJ to determine, however, it is well established that the claimant bears the burden of establishing the impairments that determine his RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

In this case, Plaintiff fails to establish that the ALJ erred in formulating the RFC. With reference to legal principles described in the above paragraph, the Court notes that Plaintiff does not argue that the ALJ failed to consider all the evidence, nor does she maintain that the ALJ failed to refute any contradictory medical evidence. Moreover, on the Court's review of the administrative decision, it is evident that the ALJ made a complete review of the record and considered each of the medical source opinions.

The Court is not persuaded that because the ALJ found Plaintiff's shoulder impairment to be "severe" at Step Two, he was required to include reaching, handling, and/or fingering limitations in the RFC. As noted by the Commissioner, the Step Two severity determination is only a "*de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). "Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* Thus, an impairment is deemed "severe" only where it more than minimally affects work ability. While Plaintiff asserts that "it follows inexorably that a severe impairment must result in some impairment of her ability to work," she cites no recognized authority to support this argument.[2]

---

[2] Plaintiff cites ODAR training materials entitled *Phrasing Hypothetical questions to Vocational Expert's Training Guide* for the proposition that "if a judge finds a 'severe' mental impairment, the RFC portion of the VE hypothetical and the findings must include at least one mental limitation." (See Doc. No. 11-1 at 5). Even if these training materials were binding on this Court, which they are not, the Court finds the cited proposition of law to be inapplicable to the instant facts, as it relates the consideration of a mental impairment which is not at issue in this case.

In the Sixth Circuit, when the ALJ finds at Step Two that a claimant suffers from at least one severe impairment, the ALJ is required to consider the limiting effects of *all* impairments—i.e. limitations resulting from both severe and non-severe impairments—when determining the claimant's RFC. *See White v. Comm'r of Soc. Sec.*, 312 Fed.Appx. 779, 787 (6th Cir.2009) ("Once one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe"). However, there is no requirement, as Plaintiff suggests, that once a impairment is deemed "severe" Step Two, some limitation arising from that impairment must be reflected in the RFC. To the contrary, should an ALJ determine that an identified impairment, severe or non-severe, does not result in any work-related restrictions or limitations, the ALJ must only state the basis for such conclusion. *Id.* at 788.

In this case, it is evident that the ALJ considered the medical records relating to Plaintiff's shoulder impairment, including those authored by her treating physician Dr. Lazzerini and her physical therapists. (See Tr. 26-27). The ALJ properly addressed why her shoulder impairment did not give rise to any limitation in the RFC:

> With respect to the claimant's alleged limitations, I find such assertions only partially credible. Although she had back, neck, and shoulder pain throughout the relevant period, the treatment notes fail to establish the level of dysfunction that she described. Indeed, she retained largely normal strength, coordination, gait, and station. Additionally, the evidence reflects little treatment throughout the early portion of 2014. Moreover, she smoked throughout the alleged period of disability, despite the negative effects on her health. One would expect a person with the degree of symptoms that the claimant reported would have consistent treatment and she would take all reasonable steps to improve her conditions.
>
> Furthermore, the claimant's treatment course was largely conservative. She did physical therapy exercises at home, she used a TENS unit briefly, and she took pain medications. Her relatively consistent use of medications with little ongoing changes in her treatment indicates that her medications provided good pain relief. Finally, the

15

> earnings record indicates that the claimant worked only sporadically in the years prior to the alleged onset date (7D). Such fact raises a question as to whether her medical conditions were the cause of her ongoing unemployment.

(Tr. 29). Nowhere in Plaintiff's brief does she acknowledge that the ALJ provided an explanation for discounting the limiting effects of her shoulder pain. Because Plaintiff does not challenge it, the Court accordingly accepts the adequacy of this explanation for discounting Plaintiff's shoulder impairment.

The Court further rejects Plaintiff's argument that reaching, grasping, and fingering limitations are "proven" by the record. Under the applicable standard, the Court does not review *de novo* or reweigh the evidence. The pertinent question is whether is whether substantial evidence supports the Commissioner's conclusion – that is, whether there exists "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. Even if the evidence could support another conclusion, this Court will not reverse the Commissioner's decision if the evidence reasonably supports the conclusion reached. *Id.* Thus, assuming Plaintiff is correct that the evidence she cites supports the conclusion that Plaintiff had limitations arising from her shoulder impairment, it will not affect the Court's decision, so long as there is substantial evidence to support the Commissioner's contrary conclusion.

Upon review of the record and the ALJ decision, it is evident that the ALJ reviewed the entire record and reasonably concluded that Plaintiff did not have reaching, grasping, or manipulative limitations. For instance, during a consultative exam in 2013, while Plaintiff complained of difficulty reaching overhead, a physical examination revealed that "[m]anual muscle testing of the upper extremities, lower extremities, and hands involving grasping,

16

manipulation, pinch maneuvers, and fine motor control was normal bilaterally." (Tr. 27, 206). A second consultative examination in April 2014 showed normal grasping, manipulation, and fine motor control. (Tr. 222). While Plaintiff complained of left shoulder pain to Dr. Lazzerini, physical examinations showed normal motor strength in both upper and lower extremities, intact sensation, and normal coordination. (Tr. 316-357). Further, throughout 2015 reported that her left shoulder pain was improving with physical therapy and medication. (Tr. 332, 337, 340, 346). During this time, Plaintiff exhibited normal motor strength in her extremities, and her sensation was intact. (Tr. 328-357). Plaintiff also exhibited symmetric reflexes bilaterally, intact coordination, and normal station and gait. (Tr. 333, 338, 341, 349, 357).

The above evidence is evidence that a reasonable mind might accept as adequate to support the ALJ's decision to exclude reaching, grasping, and manipulative limitations from the RFC. The Court accordingly concludes that the ALJ did not err by excluding such limitations from the RFC.

Further in support of her contention that her shoulder impairment warranted reaching, grasping, and manipulative limitations Plaintiff cites the opinion of her treating physician Dr. Lazzerini. In a medical source statement dated August 2014, Dr. Lazzerini opined that Plaintiff was limited to occasional reaching, handling, fingering, and feeling.

A treating medical source opinion such as Dr. Lazzerini's is entitled to controlling weight where it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial ev idence on the record. *See Bogle v. Sullivan*, 998 F2d 342, 347-48 (6th Cir. 1993). If an ALJ declines to give controlling weight to a

treating physician opinion, the ALJ must state good reasons for whatever weight is assigned. Francis v. Comm'r of Soc. Sec., 414 F.App'x 802, 804 (6th Cir. 2011).

In this case, the ALJ gave Dr. Lazzerini's opinion little weight, reasoning as follows:

> I do not give controlling weight to Dr. Lazzerini's assessment. Although he treated the claimant, the medical record fails to substantiate the degree of restrictions that he described. The claimant had ongoing back pain, but she retained largely normal strength, suggesting she could perfom1at least light work. Furthermore, the record does not show that extreme postural and environmental restrictions that Dr. Lazzerini described. Additionally, the evidence does not indicate any manipulative, hearing, or speaking limitations and Dr. Lazzerini did not describe his basis for such findings. While the claimant wore glasses, there is no suggestion that she had substantial visual limitations. Moreover, the claimant had some shoulder pain, but she did not exhibit significant ongoing restricted motion that required further reaching restrictions. Given the lack of evidentiary support, including in Dr. Lazzerini's own exams, I grant little weight to Dr. Lazzerini's opinion.

(Tr. 29).

Plaintiff does not raise a "good reasons" argument and fails to challenge the adequacy of the ALJ's reasoning. The Court accordingly deems it forfeited. However, even if this argument had been raised, the Court finds that the ALJ provided "good reasons" for discounting Dr. Lazzerini's opinion, and those reasons are supported by substantial evidence. Therefore, because the ALJ properly reached the conclusion that Dr. Lazzerini's opinion deserved little weight, his opinion fails to support Plaintiff's contention that the RFC should have included grasping, reaching, and manipulative limitations.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

    *s/Jonathan D. Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

Date: October 6, 2017

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**